FILED
2016 OCT 28 PM 3:31
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| BALFOUR BEATTY INFRASTRUCTURE, INC. a Delaware company,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>PB&A, INC., a California company,<br><br>Defendant/Counterclaimant. | Miscellaneous Action No.: 6:11cmc52orl-37GJK<br><br>Court of Origin:<br>United States District Court, Northern District of California, San Francisco Division<br>Case No. 3:16-cv-01152-WHO |

### DEFENDANT/COUNTERCLAIMANT PB&A, INC.'S MOTION TO COMPEL NON-PARTY MARTIN HILD, P.A. TO PRODUCE DOCUMENTS

Defendant/Counterclaimant Plaintiff PB&A, Inc. ("PB&A") moves this Court for an order compelling non-party law firm Martin Hild, P.A. ("Martin Hild") to respond fully to document requests pursuant to a Rule 45 subpoena duces tecum served upon Martin Hild on July 26, 2016. This motion is made pursuant to Fed. R. Civ. P. 37 and 45. PB&A's motion will be based on this Notice, the Memorandum of Points and Authorities provided herein, the exhibits attached hereto, the records and papers on file with this Court, and upon other oral and documentary evidence as may be permitted at the hearing on this motion.

### MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should compel non-party law firm Martin Hild, which previously solicited and received assistance from PB&A in conjunction with the firm's defense of

Plaintiff Balfour Beatty Infrastructure, Inc. ("BBII") in prior proceedings arising out of the same project and seeking the same damages at issue here, to comply with six document requests served upon Martin Hild by Rule 45 subpoena duces tecum.

## INTRODUCTION

Plaintiff's claims against PB&A involve allegations of professional negligence in connection with structural engineering design work PB&A performed for Plaintiff on the Transbay Transit Center construction project ("the Project") in San Francisco, California. Plaintiff alleges that PB&A's designs for certain interior bracing and for a temporary construction access trestle failed to satisfy PB&A's standard of care. In earlier proceedings seeking the same damages, BBII, through its counsel Martin Hild, took the diametrically opposite position that PB&A's designs met the standard of care.[1] In the course of the prior proceedings, law firm Martin Hild, and specifically lead counsel Gregory Martin ("Attorney Martin"), solicited the participation of PB&A without any advisement that PB&A should seek independent counsel, or warning that Plaintiff may subsequently sue PB&A on the same damages. Attorney Martin met with, emailed with, and advised PB&A about the prior proceedings and about positions taken on behalf of Plaintiff and derivatively PB&A, and otherwise acted such that PB&A perceived Attorney Martin as acting as counsel to PB&A and in PB&A's best interest.

PB&A intends to argue that BBII should be judicially estopped from pursuing its professional negligence claims against PB&A in this case because BBII argued in previous litigation that PB&A's designs met the standard of care and collected a multi-million settlement in BBII's favor. The factors courts consider when determining whether a party is estopped from taking a position are: (1) whether the party's current position is clearly

---

[1] *See* First Amended Cross-Complaint filed by BBII, *DND Construction, a California Joint Venture v. Balfour Beatty Infrastructure, Inc. et al.* San Francisco Superior Court Case No. 12-525388 (filed Jan. 9, 2013), attached hereto as **Exhibit A.**

inconsistent with its earlier position, (2) whether the party persuaded a court to accept that earlier position, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

PB&A's six document requests to Martin Hild bear on all three of those factors, in particular the third factor because the Martin Hild firm interacted directly with PB&A and solicited information and support in a joint prosecution of BBII's claims, yet never advised PB&A to seek independent counsel, nor warned PB&A that BBII might subsequently sue PB&A if BBII did not recover all of its damages. As a result, PB&A was lulled into acting to BBII's benefit and to PB&A's own detriment.

Despite Martin Hild's solicitation of PB&A's expert advice in preparing BBII's case for the DRB proceeding, the Northern District of California's recognition that PB&A may be entitled to judicial estoppel based upon this fact, and the obvious relevance of the documents to this doctrine, Martin Hild has refused to produce any of the documents at issue.

## FACTUAL BACKGROUND

On October 23, 2012, subcontractor DND Construction ("DND") filed a suit in California state court seeking damages for unpaid construction services arising out of the construction of the CDSM wall for the Project: *DND Construction, a California Joint Venture v. Balfour Beatty Infrastructure, Inc. et al.* San Francisco Superior Court Case No. 12-525388 ("DND State Court Action"). The DND State Court Action addressed numerous issues – two of which are relevant in this action: the Cement Deep Soil Mix Wall ("CDSM Wall") Interior Bracing and the Temporary Construction Access Trestle.

### A. CDSM WALL.

The Transbay Transit Center Project involved a massive excavation of an area three city blocks long in downtown San Francisco. Arup North America, Ltd. ("Arup"), one of the

largest engineering firms in the world, designed the CDSM wall. To sustain the excavation, BBII engaged PB&A to design interior bracing for the CDSM Wall subject to the overall design criteria prepared by Arup.[2] Soon after excavation began, the CDSM Wall began to leak and move, and the parties disputed responsibility for the work related to the repair of the wall.

## B. TEMPORARY CONSTRUCTION ACCESS TRESTLE.

The Owner, TJPA, required the design and construction of a temporary access trestle across the excavation in order to allow large cranes and other construction equipment access to various locations. PB&A and BBII disputed the Owner's contractual specifications for the structure's seismic capacity. The Owner demanded redesign and compliance with certain specifications designed for permanent structures despite the temporary nature of the Access Trestle. BBII argued that the Owner's demands went beyond what was required – and thus BBII should not bear responsibility for the additional cost required to meet those demands.

## C. BBII'S POSITION IN THE PRIOR DND STATE COURT ACTION.

In response to DND's claims against it, on January 9, 2013, BBII asserted cross claims against the Owner, general contractor, Webcor, and others, arguing that any design flaws associated with the Interior Bracing or Temporary Access Trestle resulted from acts or omissions of others – not BBII or its design sub-consultant PB&A. *See* **Ex. A, ¶¶ 74, 97.** For example, BBII took the position that responsibility for any design flaws in the CDSM Wall interior bracing system rested with the Engineer of Record for the Project, Arup. Specifically, BBII alleged that the leaks, cracks and wall movement were caused by Arup's selection of the type of wall system and Arup's direction in its drawings as to the type of forces that the wall would be able to withstand. *Id. at* ¶ 97.

---

[2] Comprised of a mixture of cement and soil, the CDSM wall not only provided temporary support for the 60-feet-deep excavation during the construction process, but also acted as a receiving surface for a permanent concrete train box.

4

With respect to the bracing, BBII stood by its excavation plan, which incorporated PB&A's bracing design: "In accordance with the Trade Subcontract, BBII submitted an excavation plan that complied with the contract requirements." *See* **Ex. A, ¶ 63.** With regard to the Temporary Access Trestle, BBII alleged that PB&A's original trestle design conformed to the contract and, thus, that the subsequent modifications requested by WOJV exceeded BBII's obligations and, by extension, PB&A's. *See* **Ex. A, ¶ 74.**

Martin Hild hired Vello Koiv and VAK Construction Engineering Services ("VAK") as a standard of care expert to support BBII's position that PB&A's designs for the bracing and trestle satisfied the contract and the standard of care. VAK prepared reports in 2013 stating that PB&A complied with the standard of care in its design of the access trestle and interior bracing system. **Exhibits B & C.**

### D. Martin Hild Solicits PB&A Participation in DRB Proceeding on BBII's Behalf.

In an effort to seek resolution of the damages in the DND State Court Action, the parties agreed to submit certain claims to an informal dispute resolution proceeding before the Dispute Resolution Board, including the claim involving the movement of the CDSM Wall. In preparation for that proceeding, BBII and its counsel, Martin Hild, solicited the assistance of PB&A in support of BBII's claims. *See* Declaration of Pirooz Barar, attached hereto as **Exhibit D, ¶ 2.** Key dates/events include:

- Participation in a meeting in mid-September 2013 involving representatives of BBII, Attorney Martin, PB&A and BBII's expert Vello Koiv. *See* **Ex. D, ¶ 12 & Exhibit E.**
- Instruction by Attorney Martin to PB&A not to respond to a document request made by the Owner to PB&A directly, but rather to instruct the Owner to direct all inquiries to Martin Hild instead. *See* **Ex. D, ¶ 10 & Exhibit F.**

5

- Multiple requests to PB&A to meet with Martin Hild attorneys or review and comment on draft briefing prepared by Martin Hild for submission to the DRB Proceeding. *See* **Ex. D, ¶ 11 & Exhibit G.**
- Solicitation and receipt of PB&A's detailed comments. *See* **Ex. D, ¶ 11 & Exhibit H.**
- Request that PB&A meet with BBII and its attorneys the day prior to the November 13, 2013 DRB proceeding to prepare. *See* **Ex. D, ¶ 13 & Exhibit I.** *See also* PB&A invoice reflecting time in pre-DRB meetings and attending DRB, attached hereto as **Exhibit J**.
- Subsequent communications between PB&A and BBII – including Martin Hild – regarding a second "mini-DRB" proceeding. **Exhibit K.**

In briefing for the DRB, BBII maintained that all design work completed by PB&A met the applicable standard of care and that any movement or leaks in the CDSM Wall derived from design errors by Arup. *See* **Exhibit L, p. 7 & Exhibit M, p. 1**. At no time did Martin Hild advise PB&A that: (a) Martin Hild was not PB&A's counsel; (b) PB&A should seek independent counsel; or (c) BBII may consider asserting a claim against PB&A at some later point in time. *See* **Ex. D, ¶¶ 3, 4, 6**. As a result, PB&A reasonably believed that Attorney Martin and his firm acted on behalf of, and in the best interest of, PB&A during this entire period. *See* **Ex. D, ¶¶ 5, 7, 8.**

### E. BBII'S RECEIPT OF $20MM IN SETTLEMENT AND SUBSEQUENT DEMAND TO PB&A.

The parties to the DND State Court Action mediated their claims and entered into a settlement agreement, under which the Owner, general contractor and Arup paid BBII $20 million. $4 million was paid by Arup in connection with its work on the CDSM Wall. *See* **Exhibit N, ¶ 2.1b**. Even though BBII successfully argued that Arup, not PB&A, bore

responsibility for the CDSM Wall's design flaws, BBII promptly reversed course after reaching a settlement and issued a demand to PB&A for an additional $18 million in damages allegedly incurred out of the same two issues: the interior bracing and the temporary access trestle. **Exhibit O.**

## PROCEDURAL BACKGROUND

In an effort to respond to the Northern District of California's June 7 directive to seek additional discovery in support of PB&A's judicial estoppel defense, in particular the third prong of the analysis regarding whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped, *see New Hampshire v. Maine*, 532 U.S. at 750-51, PB&A served a subpoena duces tecum on Martin Hild seeking communications between the firm and PB&A. *See* **Exhibit P**. On July 1, 2016, Martin Hild made objections to the subpoena. *See* correspondence from G. Martin to J. Walker, dated July 1, 2016, attached hereto as **Exhibit Q**. On July 26, 2016, to correct a procedural deficiency, PB&A served an amended subpoena, requesting six categories of documents from Martin Hild. *See* **Exhibit R**. On August 3, 2016, Martin Hild reiterated in a letter its objections to PB&A's document requests, including objections based on the work-product privilege. *See* **Exhibit S**.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 3.01(g), PB&A certifies that it has met and conferred in good faith with Martin Hild in writing and telephonically, as further explained herein and in the exhibits hereto, seeking to resolve the dispute without intervention by the Court and that attempts to resolve the dispute were unsuccessful.

## ARGUMENT

I. **Relevant Authority.**

Under Fed. R. Civ. P. 45(a)(1), any party may serve a subpoena commanding a

nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." The subpoena is subject to Fed. R. Civ. P. 26(b), which encompasses "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable." Under Rule 45, a person commanded to produce documents may serve a written objection to the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served." *See* Fed. R. Civ. P. 45(d)(2)(B).

Under Rule 37(a)(1), "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery" but "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." "A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). Under Local Rule 3.04, a party moving to compel discovery "shall include quotation in full of each .... request for production to which the motion is addressed .... and shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party," and "immediately followed by a statement of the reason the motion should be granted."

Fed. R. Civ. P. 37(a)(5)(A) provides: "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable

expenses incurred in making the motion, including attorney's fees." "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## II. PB&A's Rebuttals to Martin Hild's Objections

Below are PB&A's six document requests (bolded), Martin Hild's objections (italicized), and PB&A's rebuttals:

### A. PB&A's Document Requests, BBII's Objections, and PB&A Responses

1. **Any and all communications, including electronic communications, between Martin Hild on the one hand (including where Martin Hild is a copied recipient), and Pirooz Barar, Karen Barar and/or PB&A on the other hand prior to August 24, 2015 relating to, referring or discussing the Project.**

*Each of the first three requests seek[s] documents in your client's possession, to the extent that they exist at all. PB&A is clearly best situated to locate and obtain any documents which the requests plainly describe as originating from or received by your client, PB&A. It is wholly unreasonable to request documents from our Firm which are in the possession of your client.*

Contrary to Martin Hild's assertion, PB&A does not already possess all documents sought because, in addition to the routine, contemporaneous deletion of some of the email exchanges to which Martin Hild and PB&A were both parties, Martin Hild and its client BBII actively instructed PB&A not to preserve copies of key documents about which they were seeking comment from PB&A. For example, on October 30, 2013, when Martin Hild and BBII requested PB&A's feedback on a draft of BBII's position paper for the DRB, they expressly admonished PB&A to destroy its copy after returning comments: "Attached is a draft of the DRB position paper for your review, subject to the following: **1) This is for your**

9

review only – do not distribute this draft to anyone else. 2) After returning with your comments, please destroy this draft. Do NOT retain a copy. 3) We will provide a copy of the final version for your records once complete [bolded in original]."** Exhibit T.

Establishing the nature and extent of Martin Hild's communications with PB&A is crucial to understanding the precise nature relationship between the two entities because Martin Hild was possibly providing legal advice to PB&A as a joint client with BBII in connection with the DRB. *See* **Ex. D,** ¶ **9.** Moreover, courts regularly permit discovery from multiple custodians in possession of imperfectly overlapping sets of documents. That is, even if some of the documents retained by PB&A do overlap with documents retained by Martin Hild, the likelihood that Martin Hild has retained different documents than BBII entitles PB&A to discovery of both sets.

2. **All documents provided by Martin Hild, or anyone on their behalf, to Pirooz Barar, Karen Barar and/or PB&A prior to August 24, 2015 relating to, referring or discussing the Project.**

BBII's objection and PB&A response are the same as explained above for RFP 1.

3. **All documents provided by Pirooz Barar, Karen Barar and/or PB&A to Martin Hild prior to August 24, 2015 relating to, referring or discussing the Project.**

BBII's objection and PB&A response are the same as explained above for RFP 1.

4. **All non-privileged documents prepared by Martin Hild in connection with the DND Action (including the DRB proceeding) and/or the Becho Action which referred to, relied upon or discussed the design prepared by PB&A in connection with the Project.**

*Additionally, the fourth request seeking documents related to the Becho and DND actions will be addressed in the already pending requests for production served on BBII, to the extent such non-privileged documents exist.*

To fully understand the context of Martin Hild's interactions with PB&A and whether PB&A and BBII were functioning as Martin Hild's joint clients for purposes of the DRB, PB&A is entitled to Martin Hild's documents regardless of what documents BBII does or does not provide. *See* **Ex. D, ¶ 9**. As explained above, even if some of the documents produced by Martin Hild overlap with documents sought from BBII, the likelihood that Martin Hild has retained different documents than BBII entitles PB&A to discovery of both sets.

> 5. **Any and all communications, including electronic communications, between Martin Hild on the one hand (including where Martin Hild is a copied recipient), and VAK on the other hand prior to August 24, 2015 relating to, referring to or discussing the Project.**

*The fifth request involving communications between VAK and Martin Hild are objected to on the grounds that the communications sought are privileged attorney-work product.*

Federal courts have long held that a party's voluntary waiver of privilege with respect to one document waives any claim to privilege with respect to the entire subject matter. That rule was codified in 2008 in Federal Rule of Evidence 502, which provides that disclosures in the context of federal proceedings waive attorney-client and work-product protections if: "(1) the waiver is intentional, (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502. Because BBII disclosed VAK's expert report and other documents related to the DRB proceeding in 2013, prior to this suit, Rule 502 does not directly govern the instant case. Nevertheless, federal courts regularly look to Rule 502 for guidance when

11

confronting extra-judicial disclosures like those of BBII. *City of Capitola v. Lexington Ins. Co.*, No. 12-3428 LHK PSG, 2013 WL 1087491, at *2 (N.D. Cal. Mar. 13, 2013 ("Although Fed. R. Evid. 502(a) does not apply because the disclosure occurred prior to the initiation of the suit, its methodology for determining the scope of waiver is instructive.")

Under the common law principles codified in Rule 502, BBII's voluntary, selective disclosures to PB&A are precisely what waiver doctrine has always been designed to prevent. By voluntarily inviting PB&A to attend its meetings with BBII expert VAK to help BBII prepare for the DRB and by requesting PB&A's feedback on BBII's position papers, BBII has clearly waived any claims of privilege it might have had with respect to all of the subject matter discussed at those meetings and in that paper. *See* **Ex. D, ¶¶ 11, 12, 13.** As this Court recently reiterated in *Century Aluminum Co. v. AGCS Marine Ins. Co.*, the principle of subject matter waiver is intended to prevent litigants from using a "disclosed document as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation." 285 F.R.D. 468, 472 (N.D. Cal. 2012); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir.2010) (disclosure of privileged communications waives protection "as to all other communications on the same subject matter").

Martin Hild and BBII should not be allowed to reveal privileged work product to PB&A when it suited their purposes in 2013 and now, in an effort to gain a tactical advantage in this litigation, refuse to produce documents relating to the same subject matter. Martin Hild and BBII must now disclose all of their communications with VAK because they asked PB&A to assist VAK in preparing BBII's case in the DND action by discussing the details of PB&A's designs with VAK. As the Supreme Court memorably explained, a party "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his

Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination." *See United States v. Nobles*, 422 U.S. 225, 239–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

> 6. **Any and all communications, including electronic communications, between Martin Hild on the one hand (including where Martin Hild is a copied recipient), and Zocon on the other hand prior to August 24, 2015 relating to, referring to or discussing the Project.**

*The sixth request for communications between Zocon and Martin Hild are objected to as unduly burdensome, as the communications can be found by other more reasonable means.*

Martin Hild has not explained why it is any more burdensome for it to produce the requested documents than it would be for another source to produce them or what a more reasonable means might be. Zocon Consulting Engineers, Inc. ("Zocon") was the peer reviewer for PB&A's design of the access trestle, and BBII asked for Zocon's assistance in preparing its case in the DND litigation. PB&A is entitled to documents illuminating the relationships among Martin Hild, BBII, and Zocon as well. Understanding Martin Hild's interactions with Zocon throughout the DND proceedings and, in particular, the positions that BBII assumed with respect to Zocon's involvement is important for the very reasons BBII provided to the DRB: Zocon's input into and approval of PB&A's designs constitutes strong evidence that those designs met the contractual obligations and professional standard of care. Martin Hild's attempt to deprive PB&A of full access to its communications with Zocon when it previously found it advantageous to collect Zocon, PB&A, and VAK around a single table is yet another illicit attempt to have it both ways, sharing evidence only to the extent it serves the purposes of Martin Hild and BBII and depriving PB&A of the evidence required to develop its judicial estoppel argument.

## CONCLUSION

In 2013, Martin Hild intentionally brought together various parties with knowledge about PB&A's designs and design process—PB&A itself, Zocon, BBII, and VAK—in order to strengthen and refine BBII's defense of those designs before the DND court and the DRB panel. As a result, the DND proceedings resolved in a favorable settlement for BBII. In fact, as a part of its settlement agreement, BBII agreed that it was paid in full for all of the work that it performed. *See* **Ex. K, ¶ 13c, p. 14**. Although PB&A lacked independent counsel and was effectively relying on Martin Hild for legal advice about the issues at stake in the DND action, Martin Hild never advised PB&A that Martin Hild did not represent PB&A or that PB&A should seek independent counsel. *See* **Ex. D, ¶ 3, 4, 9.** Instead, as counsel for BBII, Martin Hild took full advantage of PB&A's unsuspecting cooperation to elicit PB&A's most candid and unprotected opinions about the very designs that BBII has now made the subject of a second lawsuit—except, of course, that BBII is now using the evidence collected during the earlier suit to advocate positions diametrically opposed to what it previously maintained over the course of several years. *See* **Ex. D, ¶¶ 6, 9, 11, 12.** Only months after telling the DND court that "[o]ther lawsuits are not foreseeable at this time," Martin Hild sent a demand letter to PB&A on BBII's behalf. *See* **Ex. Q**.

Just as Martin Hild's invocation of the attorney work-product privilege embodies precisely the kind of double-dealing that the waiver doctrine is designed to prevent—manipulating an opponent's access to privileged information in an attempt to gain an unfair tactical advantage—so too do does BBII's about-face with respect to PB&A's designs represent the precise abuse that the doctrine of judicial estoppel is designed to prevent. The Northern District of California's June 7, 2016 Order has already authorized and encouraged PB&A to seek the additional discovery needed to support its judicial estoppel argument. (**Exhibit U.**) Martin Hild's refusal of that discovery is nothing short of an attempt to deprive

PB&A of access to the very information that Martin Hild itself once collected in order to defend PB&A designs. Martin Hild's refusal to provide PB&A access to that same body of evidence runs counter to the fundamental principles of our adversarial system.

Even more troubling, though, are Martin Hild's attempts to obscure the nature of its interactions with PB&A at a time when PB&A lacked the protections that independent counsel would have afforded. Precisely because BBII was advocating vigorously in favor of PB&A's designs during the DRB proceedings, PB&A saw no need to seek independent counsel. Instead, it trusted Martin Hild to defend PB&A's interests and to make fair use of the information that PB&A was liberally and unsuspectingly providing. BBII and Martin Hild repaid PB&A's trust by filing this suit and completely abandoning the factual and legal positions that they had defended over the course of several years.

At present, many fundamental questions remain unanswered concerning BBII's reversal, including whether Martin Hild was jointly representing PB&A and BBII during the course of the DRB proceedings. Until Martin Hild complies with PB&A's very limited document requests and PB&A is able to gain a clearer understanding of exactly what transpired during the DND State Court Action, those fundamental questions will remain unanswered and PB&A will remain unable to develop its judicial estoppel defense. This Court should compel Martin Hild to comply with its discovery obligations under Fed. R. Civ. P. 26. PB&A further requests an award of expenses and attorneys' fees as mandated by Fed. R. Civ. P. 37.

DATED this 27th day of October, 2016.

KELLY & WALKER LLC

*[signature: Todd S.]*

Todd J. Stalmack, *Pro Hac Vice-Adm. Pending*
1512 Larimer Street, Suite 200
Denver, Colorado 80202
Tel: (720) 236-1800
Fax: (720) 236-1799
Email:   tstalmack@kellywalkerlaw.com

*Attorneys for Defendant/Counterclaim Plaintiff PB&A, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2016, the foregoing **DEFENDANT/ COUNTERCLAIMANT PB&A, INC.'S MOTION TO COMPEL NON-PARTY MARTIN HILD, P.A. TO PRODUCE DOCUMENTS** was delivered by Fedex Overnight addressed to the following:

Gregory S. Martin, Esq.
Ricky L. Johnson, Esq.
Martin Hild, P.A.
555 Winderley Place, Suite 415
Maitland, FL 32751
gsm@martinhild.com
rlj@martinhild.com

Courtesy copy mailed by first-class mail to:
Honorable William H. Orrick
United States District Court
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

*/s/ Todd S.*

Todd J. Stalmack, *Pro Hac Vice-Adm. Pending*
1512 Larimer Street, Suite 200
Denver, Colorado 80202
Tel: (720) 236-1800
Fax: (720) 236-1799
Email: tstalmack@kellywalkerlaw.com

*Attorneys for Defendant/Counterclaim Plaintiff PB&A, Inc.*